RICCIARDELLI v̇. NEW YORK CENT. & H. R. R. CO. (No. 6541.)

(Supreme Court, Appellate Division, First Department. December 18, 1914.)

1. CARRIERS (§§ 320, 347*)—PASSENGERS—INJURIES BY TRAIN—QUESTIONS FOR JURY—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

In an action for the death of a person, struck by a train while crossing the tracks at a station for the purpose of boarding such train, in which plaintiff sought to predicate negligence on the fact that such train customarily came to a stop before reaching the point where plaintiff was crossing the track, evidence *held* insufficient to make a casê for the jury as to defendant's negligence or the decedent's freedom from contributory negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1118, 1126, 1149, 1153, 1160, 1167, 1179, 1190, 1217, 1233, 1244, 1248, 1315–1325, 1346, 1350–1386, 1388–1397, 1402; Dec. Dig. §§ 320, 347.*]

2. CARRIERS (§ 287*)—INJURY TO PERSONS ON TRACK—LIABILITY.

An engineer of a train approaching a station had a right to assume that intending passengers, aware of the approach of the train, would not attempt to cross the tracks when the engine was within 50 feet, and in the absence of notice that they were so crossing had a right to proceed to the usual and necessary stopping point for a train of three cars, though he thereby proceeded about a car length farther than on other occasions, when the train consisted of only two cars, especially where passengers could, and most of them did, board the train from the side on which a person struck by the train was standing before he attempted to cross the track.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1154–1159, 1161–1166; Dec. Dig. § 287.*]

3. CARRIERS (§ 327*)—PASSENGER SEEKING TRANSPORTATION—CONTRIBUTORY NEGLIGENCE.

An intending passenger, who was in possession of all of his faculties and knew that a train was approaching when he stepped upon the track, and who might have remained in safety and boarded the train without crossing the track, assumed the risk of getting across by attempting to cross when it was within 50 feet, for the purpose of boarding it from the other side, though on other occasions, when the train contained less cars, it had stopped before reaching the point at which he was crossing, as he was not justified in assuming that it would stop on that occasion, or slow down to enable him to cross.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1363–1366; Dec. Dig. § 327.*]

Appeal from Trial Term, New York County.

Action by Basilio Ricciardelli, as administrator of Antonio Ricciardelli, deceased, against the New York Central & Hudson River Railroad Company. From a judgment on a verdict for plaintiff, and an order denying a new trial, defendant appeals. Reversed, and complaint dismissed.

Argued before CLARKE, McLAUGHLIN, LAUGHLIN, SCOTT, and DOWLING, JJ.

Robert A. Kutschback, of New York City, for appellant.

Isidor Frey, of New York City (Louis Steckler, of New York City, on the brief), for respondent.

LAUGHLIN, J. This is a statutory action to recover for the death of Antonio Ricciardelli, alleged to have been caused by the negligence of the defendant.

[1] At 6:32 a. m. on the 10th of January, 1913, the decedent was struck by the engine of a north-bound passenger train at the Van Cortlandt Park station of the Putnam division of the defendant's railroad and was instantly killed. The decedent and eight or ten other laborers were accustomed to take that train daily to go to Pocantico Hills, where they were employed. The station is elevated, and the tracks cross Van Cortlandt avenue on a viaduct. Access to the trains was had by stairways leading from the northerly side of Van Cortlandt avenue on either side of the tracks up to the level of the roadway. The railroad at this point consisted of two tracks, one for north-bound and the other for south-bound trains. There was no station on the easterly side, but there was a small station, 31 feet in length north and south, on the westerly side, and a platform in front thereof, 91 feet in length, extending to and along the south-bound track to the north and south of the station. There was what is described as a crossing opposite the station, consisting of 16-foot planks lengthwise between the rails of the tracks and the two tracks. The distance between the inner rails of the two tracks was 7 feet 3 inches, and the overhang of the cars was 2 feet 7 inches, leaving 2 feet 1 inch between passenger cars standing or passing on the two tracks. The roadbed between the rails of each track and between the tracks consisted of small crushed stone, and was substantially level with the upper surface of the ties, or a little higher, and the space east of the north-bound track, which was the track furthest from the station, was graded with the same material substantially to the same level. Passengers were accustomed to board north-bound trains from either side, but most of them boarded and alighted on the westerly side, or the side nearest the station.

The evidence shows that it had been the custom of the decedent to cross over this crossing from the station before the arrival of the train, and to board it from the easterly side. It was a cold morning, and the decedent and other intending passengers awaited in the station the approach of the train. A fellow workman, one Englisano, was in the open doorway of the station, and saw the train approaching when it was about 1,000 feet distant, and drew the attention of the decedent, who was standing close behind him, thereto, and the decedent looked towards the train and they both started over this crossing. The evidence shows that they then had to walk about 35 feet to clear the track on which the train was approaching. When Englisano reached the track on which the train was coming, the engine was about 50 feet from him and the decedent was 4 feet behind him, and they continued on, and when Englisano stepped off the track to the east the engine was within 15 or 18 feet of him, and it struck the decedent when he had one foot over the easterly rail and was in the act of lifting the other over it. It is uncontroverted that the headlight cars were lighted, and that the train was in plain sight and making considerable noise, which could be and was plainly heard by those about the station. The uncontroverted evidence also shows that the decedent knew and observed that the train was approaching.

Negligence is predicated on the fact, testified to by several witnesses, although controverted, that on other occasions the train customarily came to a stop with the front of the engine at the southerly end of the plank crossing, and that on this occasion it ran some 70 feet beyond before stopping. It appears that the train consisted of an engine, tender, and three cars, and that its total length was 241 feet 4 inches. Evidence on the part of defendant tends to show that at times the train consisted of only two cars, and that on those occasions it stopped with the engine about a car length south of where it stopped on the occasion in question, but that it was necessary when the train consisted of three cars to move to the point where it stopped on this occasion, in order to enable passengers to alight from and to board the train, owing to the narrowness of the roadbed on the bridge over the avenue to the south. The engineer was on engineer's seat at the right-hand side of the engine, or the side farthest from the station, and was not in a position to see decedent when he stepped onto the tracks. The fireman testified that he was on the seat on the left-hand side and saw a number of passengers waiting there to board the train, but that he did not see the accident. A south-bound passenger train was due at the station at the same time, but the rules of the company required that the second train to arrive should stop a few hundred feet before reaching the station and remain there until the other train pulled out. There was no obstruction to the view toward the north, from which the other train was to approach, for upwards of 1,000 feet; and the uncontroverted evidence shows that the south-bound train was a little late, and came in slowly, and stopped, as the rules required, until it was signaled to come on after the accident.

[2, 3] We are of opinion that the plaintiff failed to show negligence on the part of the defendant or freedom from contributory negligence on the part of the decedent. The engineer had a right to assume, particularly as passengers could and most of them did board the train from the west side, that intending passengers, who were aware of the approach of the train, would not attempt to cross to the east side when the engine was within 50 feet, and in the absence of notice that they were so crossing he had a right to proceed to the usual and necessary stopping point for a train of three cars, notwithstanding the fact that on other occasions, when the train consisted of two cars, it had come to a stop about a car length further south. The decedent, so far as appears, was in the possession of all his faculties, and there can be no question that he knew the engine was close to him when he stepped upon the track. He might have remained in safety on the westerly side, as many passengers did; and in attempting to cross the track when the engine was so near he should have observed its speed, and in failing to do so and then proceeding he assumed the risk of getting across, for he was not justified in assuming that the train would stop or that it would slow down to enable him to cross, even though on other occasions it had stopped before reaching the point at which he was crossing. The defendant duly moved for a nonsuit at the close of the plaintiff's case, and moved for a dismissal of the complaint at the close of the evidence, and an exception was taken to the denials of the motions. We are of

opinion that the plaintiff failed to establish a case for submission to the jury, and that it was error to deny the motions.

It follows that the judgment and order should be reversed, with costs, and the complaint dismissed, with costs. All concur.